[Cite as *State v. Turner*, 2013-Ohio-1666.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98803**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BRIAN S. TURNER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-555515

**BEFORE:** E.T. Gallagher, J., Boyle, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** April 25, 2013

**ATTORNEY FOR APPELLANT**

Michael V. Heffernan
75 Public Square
Suite 700
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Matthew E. Meyer
          Adam M. Chaloupka
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1}  Defendant-appellant Brian Turner ("Turner") appeals the trial court's judgment finding him guilty of having a weapon while under disability.  We find no merit to the appeal and affirm.

{¶2} Turner was charged with aggravated robbery and having a weapon while under disability.  Turner waived his right to a jury on the having a weapon while under disability count of the indictment, which was tried to the court.  The aggravated robbery charge, which included one- and three-year firearm specifications, was tried to a jury. The facts, as set forth in the trial transcripts, are as follows.

{¶3} On October 11, 2011, at approximately 10:00 p.m., Harry Huff ("Huff"), a Superior Food Mart employee, observed a young man steal a 30-pack of beer from the beer cooler and run out of the store.  Huff alerted everyone in the store of the theft. Huff and the store owner, Muntaser Muntaser ("Muntaser"), chased the man into an empty field across the street.  Although it was night, Muntaser testified that there was sufficient light to view the suspect. He stated that although he did not know the suspect's name, he had chased him for theft "plenty of times" before and that he has had problems with the suspect stealing from him since January 2010.   (Tr. 454, 482.)

{¶4} Muntaser did not call the police the night of the robbery because he had previously called the police about this suspect in the past and did not know his name. However, the next day he observed the suspect taunting him from across the street and

called the police. (Tr. 485.) Muntaser directed the police to an apartment building where he had seen the suspect enter with two other young men. The police apprehended three men matching Muntaser's description, and Muntaser identified Turner as the suspect who stole beer from his store and pointed a gun at him.

{¶5} Turner called his friend Charles Edward Mason ("Mason") to testify on his behalf. He testified that Turner had been staying at his place for several days and that on October 11, 2011, Mason and Turner were playing video games at the time the alleged robbery occurred.

{¶6} At the conclusion of the trial, the court found Turner guilty of having a weapon while under disability. The jury, however, was unable to reach a verdict on the aggravated robbery count.

{¶7} Prior to a second trial, Turner requested appointment of a new attorney, which was granted. Turner reached a plea bargain with the state and pleaded guilty to an amended count of breaking and entering. The court sentenced Turner to one year in prison for breaking and entering and three years for having a weapon while under disability. Turner now appeals and raises three assignments of error.

## Manifest Weight of the Evidence

{¶8} In the first assignment of error, Turner argues his conviction for having a weapon while under disability was against the manifest weight of the evidence. He contends there was little evidence identifying him as the man who stole from the store and carried a firearm.

**{¶9}** A challenge to the manifest weight of the evidence attacks the verdict in light of the state's burden of proof beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541. When reviewing a claim that the judgment was against the manifest weight of the evidence, we review the entire record, weigh both the evidence and all the reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice and only when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*

**{¶10}** Turner argues the evidence linking him to the crime was not credible because Muntaser failed to produce a video recording of the theft, even though he had surveillance cameras installed. Muntaser admitted that he had surveillance cameras, but explained that, at that time, the memory of the video recording was limited and the video was erased.

**{¶11}** Nonetheless, Muntaser testified that he witnessed Turner run out of the store with the beer and chased him to the field across the street. Although it was night, there was sufficient light to view Turner's face. He had chased Turner "plenty of times" and had called the police in the past to report him stealing from the store. Muntaser explained: "I started recognizing him because he was a big menace * * *. All the stores

on Superior know him. And he started giving me problems about the winter of 2010." Although he did not know Turner's name, he was well acquainted with his appearance and could easily identify him.

{¶12} Huff testified that he observed Turner stealing in the store and followed Muntaser when he chased Turner across the street. Huff testified that he saw Turner put the beer down on the ground, point the gun at Muntaser, and heard him say: "I'm going to shoot you." Huff, who worked part-time, had seen Turner in the store twice. It was reasonable for the court, who was the trier of fact, to conclude that Muntaser and Huff were capable of positively identifying Turner as the culprit. The evidence weighs heavily in favor of conviction rather than acquittal.

{¶13} Therefore, the first assignment of error is overruled.

## Sufficiency of the Evidence

{¶14} In the second assignment of error, Turner argues there was insufficient evidence to support his conviction for having a weapon while under disability. He argues there was no physical evidence linking him to the crime, and the state's witnesses were not credible under the circumstances.

{¶15} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶16} R.C. 2923.13(A)(2), which governs having weapons while under disability, prohibits an individual from knowingly carrying, or using, a firearm if the individual has been convicted of a felony offense of violence. In this case, the parties stipulated that Turner had previously been convicted of aggravated robbery, which is a felony offense of violence.

{¶17} Turner argues the evidence was insufficient to support his conviction because there was no video evidence of the crime, and no gun was ever found in Turner's possession. However, Muntaser and Huff both testified that they witnessed Turner leave the store carrying a 30-pack of beer without paying for it and that Turner pointed a gun at Muntaser and threatened to shoot him. This evidence is sufficient to support Turner's conviction for having a weapon while under disability.

{¶18} Turner also argues there was insufficient evidence because neither Muntaser nor Huff's testimony was credible, Mason provided an alibi defense, and Muntaser's failure to call the police at the time the crime occurred is suspicious. However, these arguments relate to the weight of the evidence and are irrelevant to a sufficiency analysis where we view the evidence in a light most favorable to the state without any credibility considerations.

{¶19} Therefore, the second assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶20} In the third assignment of error, Turner argues he was denied his constitutional right to the effective assistance of counsel. He contends his trial counsel was ineffective in advising him to waive his right to a jury trial on the charge of having a weapon while under disability.

{¶21} To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. A defendant must show that counsel acted unreasonably and that, but for counsel's errors, there exists a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 696; *Bradley*, 42 Ohio St.3d 136, at paragraph three of the syllabus. In making this determination, the reviewing court must presume that counsel's conduct was competent. *Id.*

{¶22} The defense requested bifurcation of the aggravated robbery and having a weapon while under disability charges to avoid possible prejudice; a prior conviction being one of the elements of having a weapon while under disability. The prejudice in this case would have been great because Turner's prior conviction was for aggravated robbery — the same crime for which he was on trial. Bifurcation protected Turner from unfair prejudice, which might have resulted in a conviction rather than a hung jury.

Under these circumstances, we cannot say that defense counsel's decision to bifurcate the trial fell below an objective standard of reasonableness.

{¶23} Turner also argues that his trial counsel was deficient in failing to present a theory that there was an ongoing feud between Turner and Muntaser or that Turner's shoulder injury from a gunshot wound prevented him from lifting his arm. However, the transcript demonstrates that these theories were presented, both on cross-examination and in closing argument. In closing argument, defense counsel stated:

> [W]hy would Mr. Muntaser make this up or be wrong? What do we know about his and Brian's relationship? He doesn't like Brian. He made that clear. Brian's not allowed in his store.
>
> And we learned from Mr. Mason there's talk about a lawsuit between Mr. Muntaser and Brian Turner. Is there a reason to have a beef against Brian?
>
> He doesn't like him. He's easy. He's an easy person to accuse. And what would help Mr. Muntaser's position? If he showed the video, to at least show the beginning of the incident. Was Brian Turner in the store? No video.

{¶24} Turner's trial counsel was effective. Her decision to bifurcate the trial was reasonable because it was guaranteed to protect Turner from prejudice that would inevitably result from the disclosure of his prior aggravated robbery conviction. She presented a plausible defense that Muntaser might be falsely accusing Turner of the crimes and could not produce a video of a crime that never occurred.

{¶25} Therefore, the third assignment of error is overruled.

**{¶26}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
PATRICIA A. BLACKMON, J., CONCUR